JACOB H. LONG et al., *Appellees,* v. ALVERDA E. BOYER, Individually and as Executrix, etc., *Appellant.*

No. 17,784.

HEADNOTE BY THE REPORTER.

1. WILL—*Set Aside—Incapacity of Testator.* The evidence was sufficient to support the finding of the trial court, that when the will was executed the testator was of unsound mind, and did not know the extent of his property nor understand the disposition he was making of it.

2. EVIDENCE—*Admission not Prejudicial.* Where the court in one of its findings expressly states that certain testimony which was received was incompetent it will be presumed that the court gave that testimony no weight and that, therefore, no prejudice could have resulted from its reception.

Appeal from Gove district court. Opinion filed February 8, 1913. Affirmed.

*A. D. Gilkeson,* of Hays, *W. E. Saum,* of Kansas City, Mo., and *Lee Monroe,* of Topeka, for the appellant.

*John E. Hessin,* of Manhattan, for the appellees.

*Per Curiam:* This was an action to set aside the will signed by Samuel Long, and the grounds of attack were that he lacked testamentary capacity to execute

the will and that it was signed through undue influence exercised by his daughter, a beneficiary under the will. Much testimony was taken as to the capacity of Long, and upon it the court found that on April 11, 1906, when the will was executed, he was of unsound mind, did not know the extent of his property nor understand the disposition he was making of it. .It was found that he was suffering from senile dementia or melancholia and was not conscious either of the ties of relationship or of his obligations to kindred. It was found, too, that while the evidence did not disclose that fraud or undue influence was exercised at the signing of the will, Mrs. Boyer had secluded him most of the time since he had resided with her, which was about six months before the will was made, that she denied relatives and others access to or communication with him, that this surveillance increased after the signing of the will until it reached practical imprisonment "in a lonely hut on an uninhabited prairie," and because of his condition and surroundings Mrs. Boyer had exercised undue influence over him. It appears that at least a year before the will was made the mind and memory of Long began to fail, and although on a hearing in the probate court several months before the will was made he was found to be insane an appeal was taken from that decision to the district court and on a trial there a finding of sanity was returned. Between the time of the adjudication in the probate court and the reversal of that decision on appeal in the district court the will was signed by Long. There is a sharp conflict in the testimony in regard to his mental capacity. Many of his neighbors and those near to him testified that his mind was sound enough to transact ordinary business and that he was competent to make a will when the paper was signed. However, there is abundant testimony tending to show mental incapacity and which sufficiently supports the findings of the trial court. Most of the testimony upon which the findings rest was

oral, but even if it had all been in the form of depositions and documents we would be inclined to the opinion reached by the district court.

Complaint is made of testimony given by some of the Long heirs, who were parties, which included transactions and communications had personally with Long. The witnesses were not incompetent to testify, but some of the testimony did trench on the rule excluding that kind of evidence. The court, however, expressly stated in one of the conclusions that such testimony was incompetent, and holding that view it must be presumed that the court gave it no weight and hence no prejudice could have resulted. (*Broadie v. Carson*, 81 Kan. 467, 106 Pac. 294.)

The judgment of the district court will be affirmed.