No. 29,243.

Oscar Almquist, *Appellee,* v. Charles W. Johnson, as Receiver of the American State Bank of Coffeyville, and Fred B. Keeler, as Assistant Receiver, etc., *Appellants.*

(286 Pac. 200.)

Opinion filed April 5, 1930.

*Dallas W. Knapp,* of Coffeyville, for the appellants.
*Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: The principal question involved in this appeal is whether the nonclaim provision of section 5 of chapter 88 of the Laws of 1927, reducing the time for depositors and creditors to file their claim with the receiver of an insolvent state bank to one year after the appointment of the receiver, applies to claims against a bank in the hands of the receiver prior to the time the new law became effective.

The two claims of the plaintiff in this case, one a certificate of deposit and the other a dishonored draft, were presented to the receiver for allowance at a time which was more than one year after the date of his appointment, and were by him rejected on that account. The plaintiff later filed this action in two counts, and the answer of the receiver is a general denial, and also that the claims are barred by the statute of limitations, having reference to this provision in the Laws of 1927. Trial was had to the court and

judgment was rendered for the plaintiff on both counts, from which the receiver appeals.

The certificate of deposit was issued January 1, 1927, and the draft January 31, 1927. The bank failed March 31, 1927, and the receiver was appointed in April, 1927. Chapter 88 of the Laws of 1927 became effective June 1, 1927. Notice was published by the receiver May 15, 1928, fixing June 1, 1928, as the final date for depositors and creditors to file claims, which was the only notice of the kind given in this case. These claims were presented to the receiver in September, 1928, and being rejected, this action was commenced March 7, 1929. It was shown in the trial that at the time this action was commenced the receivership had not been closed and that he had funds on hand for final distribution.

The part of section 5 of chapter 88 of the Laws of 1927, urged by the appellant as controlling and applicable to the facts in this case, is as follows:

"All claims of depositors and other creditors must be filed with the receiver within one year after the date of his appointment, and if not so filed such claims shall be barred from participation in the estate of such bank."

Prior to the enactment of this statute, R. S. 60-306, or the five-year statute of limitations, is conceded to have been the only statute limiting the time of filing such claims. However, since the administration of receivers of insolvent banks is under the supervision and jurisdiction of the district court of the district in which the bank is located, it has been held under the old law that the court could make an order fixing a reasonable time within which depositors and creditors must present their claims to the receiver or be barred from participating in the assets of the bank, even though the time thus fixed be less than the maximum period of the statute of limitations. (*Thompson v. Bone,* 122 Kan. 195, 251 Pac. 178.) So that while the new enactment might appear on its face to be a specific reduction of the time allowed for filing such claims from five years to one year, yet in practical effect it was only changing or limiting it to one year instead of what a court of equity might think was a reasonable time within five years. That the legislature has the right and power to increase or reduce the time for filing claims and to lengthen or shorten the period of limitation statutes is not a debatable question in Kansas, as such changes have been held to affect the remedy only and not to impair rights or obligations. (*Swickard v. Bailey,* 3 Kan. 507, 512; *Keith v. Keith,* 26 Kan. 26;

*Milbourne v. Kelley,* 93 Kan. 753, 145 Pac. 816; *Davis v. Nation,* 82 Kan. 410, 108 Pac. 853; *Mayse v. Belt,* 83 Kan. 746, 112 Pac. 624; *Serrault v. Price,* 125 Kan. 548, 265 Pac. 63.)

Chapter 88 of the Laws of 1927 consists of eleven sections (in addition to formal ones), each of which is an amendment of a distinct and separate section of chapter 9 of the Revised Statutes of 1923, and the chapter makes no specific exception of existing or accrued causes of action, from which the appellant forcibly argues that such omission would naturally make it apply to actions already accrued as well as those arising or accruing in the future, citing 37 C. J. 694. The omission of such express exception does not wholly determine the question; it only raises a presumption that no exception was intended, as stated in the authority just cited. But a construction of the act itself is necessary to learn the intention of the legislature in this particular respect. Observing the changes or new matter found in this chapter, section 1 requires the approval of officers' bonds by the bank commissioner. Section 2 imposes many restrictions on the making of loans to managing officers of the bank. Section 3 is almost entirely new as to safeguarding the reserve. Section 4 requires the bank examiner to examine the bank at least twice each year instead of once as formerly. Section 5 has no change except the addition of the limitation provision above quoted. Section 6 concerns voluntary liquidation, eliminating many provisions in the former law. Section 7 is a criminal statute and increases the maximum punishment from 15 to 50 years for violations. Section 8 extends the privilege to more than two persons to check on same account under special arrangement to that effect and uses this language, "when a deposit has been made, or shall hereafter be made." Section 9 adds to list of securities that may be handled, and prohibits the operation of branch banks. Section 10 increases the minimum amount of capital stock required, and provides, as did the section amended, "That the limitations in regard to capital herein shall not apply to banks already chartered at the time of the passage of this act." Section 11 imposes new requirements relative to surplus, and limits dividends.

Section 10 answers for itself the question here under consideration, and nearly all the other changes are such as could only apply to the future. Besides, we must not overlook the fact that a strict interpretation of the retrospective application might in many cases near the border line seriously violate the former rule of a reasonable time as prescribed by the court. No one could safely say that a

retrospective operation of this act as a whole, or any particular part of it, unless it be section 8, has been unequivocally expressed, and it is never the rule to construe a statute as applying retrospectively unless such is clearly the legislative intent.

"Generally, a statute will be construed as applying to conditions that may arise in the future. An act will not be given a retrospective operation unless the intention of the legislature that it shall so operate is unequivocally expressed." (*Douglas County v. Woodward,* 73 Kan. 238, syl. ¶ 1, 84 Pac. 1028.)

"Ordinarily statutes are designed to apply prospectively rather than retrospectively. They may, of course, be remedial in their nature, designed to apply to and remedy existing conditions. They are not construed as applying retrospectively unless such is clearly the legislative intent. When such construction will disturb vested rights, or impair the obligations of existing contracts, it will not be given unless the wording of the statute makes such construction imperative." (*Bank Savings Life Ins. Co. v. Baker,* 120 Kan. 756, 758, 244 Pac. 862.)

We therefore conclude that there was no error in the ruling of the trial court that the one-year limitation of the amended act did not apply to the claims of the plaintiff in this case against a bank which was in the hands of the receiver prior to the time the new law became effective.

Appellant suggests an error in the matter of the allowance of interest on the two claims, and appellee concedes the error to a certain extent. We think the certificate of deposit properly drew interest at four per cent from its date, January 1, 1927, until the failure of the bank on March 31, 1927, and no more until the date of the judgment; and the other claim should not draw any interest prior to date of judgment.

With the modification as to the allowance of interest, as herein specified, which the trial court is directed to make when the cause is remanded, the judgment is affirmed.